IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dwight F. Sullivan, | ) | Case No. 8:13-cv-0876-TMC-JDA |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Larry Cartledge, | ) | |
| Warden, McCormick & Perry Correctional | ) | |
| Institutions, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Respondent's motion for summary judgment [Doc. 17]. Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on March 28, 2013.[1] [Doc. 1.] On June 27, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 16, 17.] On June 28, 2013, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 18.] On August 30, 2013, Petitioner filed

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Therefore, this action was filed on March 28, 2013. [Doc. 1-3 (envelope stamped by correctional institution on March 28, 2013).]

a response in opposition to Respondent's motion.  [Doc. 23.]  Accordingly, the motion is ripe for review.

## BACKGROUND

Petitioner is presently confined and serving two life sentences plus thirty years at McCormick Correctional Institution ("McCormick").  [Doc. 1 at 1.]  In October 2003, Petitioner was indicted for two counts of murder, one count of burglary, and one count of possession of a firearm or knife during the commission of a violent crime.. [Doc. 16-15 at 18.]  On June 9, 2005, after a trial in which Petitioner was represented by James H. Price and Ryan Beasley, ("Price" and "Beasley"), a jury found Petitioner guilty of all charges.  [*Id.* at 11–14.] Judge William P. Keesley sentenced Petitioner to life in prison without parole for each murder count and thirty years for the burglary count, all sentences to be served consecutively. [Doc. 1 at 1.]

**Direct Appeal**

Petitioner timely filed and served a notice of appeal. On October 31, 2006, Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense filed an *Anders* brief[2] on Petitioner's behalf in the South Carolina Court of Appeals, as well as a petition to be relieved as counsel.  [Doc. 16-8.]  The brief raised the following issue:

> The trial judge committed reversible error while charging the jury on voluntary manslaughter by limiting potential legal provocation to "some act ... some overt threatening act that would have produced heat of passion," as this definition excludes the traditionally-sufficient provocation of finding one's spouse or paramour in a guilty embrace or flagrantly suggestive situation.

---

[2]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

[*Id.* at 4.]  Petitioner filed a pro se response raising three issues:

> Issue 1: The trial judge erred in failing to grant trial counsel's motion for a directed verdict as to the crime burglary in the first degree.
>
> Issue 2: The trial court erred in failing to grant trial counsel's motions for directed verdict as to the charges of murder.
>
> Issue 3: The trial judge erred in admitting a graphic color photograph of one of the gunshot victims during trial, which was very prejudicial to [Petitioner].

[App. 582.]   On October 30, 2007, the South Carolina Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal and granting his appellate counsel's motion to be relieved.  [App. 592–93.]  Remittitur was issued on November 15, 2007.  [App. 594.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed a timely application for post-conviction relief ("PCR") on April 1, 2008.  [App. 437–50.]  Petitioner raised the following grounds for relief:

> Issue 1 – Counsel failed to object or move to quash burglary indictment based on prosecutorial misconduct.
>
> Issue 2 – Counsel was ineffective in failing to object and/or preserve the [Petitioner's] right to be present at his arraignment charging a new burglary in the first degree.
>
> Issue 3 – Counsel was ineffective in his decision to forego cross-examination of the state witness without first interviewing and/or investigating to determine best course of action.
>
> Issue 4 – Counsel was ineffective for failing to request *Batson* hearing when prosecutor used a strike to remove the only black male from jury venire.
>
> Issue 5 – Counsel failed to object to the judge's findings concerning juror with eyes closed during the jury instructions.

3

Issue 6 – Counsel failed to move for a new trial or change of venue after trial judge stated where his mother worked and grew up and where his father lived.

Issue 7 – Counsel failed to request and/or preserve the [Petitioner's] rights to speedy trial.

Issue 8 – Counsel failed to object and/or move for a new trial due to prosecution failure to produce and/or preserve video tape evidence and male clothing taken from the crime scene.

[*Id*.]

A hearing was held on the PCR application on November 16, 2010, at which Petitioner was represented by attorney Rita M. Metts. [App. 457–544.] Testimony was received from Petitioner and from Price. [App. at 458.] On February 19, 2010, the PCR court filed an order denying and dismissing the application with prejudice. [App. at 546–62.] After examining each of Petitioner's claims, the PCR court's order concluded that trial counsel adequately conferred with Petitioner, conducted a proper investigation, were thorough in their representation and that their conduct did not fall below an objective standard of reasonableness. [App. at 561.] Therefore, "this Court finds and concludes that the [Petitioner] has not established any constitutional violations or deprivations that would require this court to grant his application." [*Id*.]

A notice of appeal was timely filed and served. [Doc. 16-10.] On November 1, 2010, Robert M. Pachak of the South Carolina Commission on Indigent Defense filed a *Johnson* petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

Whether defense counsel failed to provide an adversarial challenge to the State's case?

4

[Doc. 16-11 at 3.] Pachak also requested to be relieved as counsel pursuant to *Johnson v. State*, 294 S.E.3d 201 (1988), representing to the court that he found Petitioner's appeal to be without merit.  [*Id.* at 11.]  Petitioner also filed his own pro se petition, alleging that counsel was ineffective in failing to cross-examine victim Kim Sander's daughter and in failing to object to the judge's finding about a juror with his eyes closed during jury instructions.  [Doc. 16-12 at 4.]  On January 17, 2013, the South Carolina Court of Appeals denied the petition for writ of certiorari and relieved Pachak as counsel.  [Doc. 16-13.] Remittitur was issued on February 4, 2013.  [Doc. 16-14.]

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on March 28, 2013, pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner asserts the following grounds for relief, quoted verbatim:

**Ground One**:     The trial judge committed reversible error while charging the jury on voluntary manslaughter, by limiting potential legal provocation to "some act ... some overt threatening act that would have produced heat of passion," as this definition excludes the traditionally sufficient provocation of finding one's spouse or paramour in a guilty embrace or flagrantly suggestive situation.

**Ground Two**:     The trial judge erred in failing to grant counsel's motion for a directed verdict as to the crime of burglary in the first degree.

**Ground Three**:     The trial court erred in failing to grant counsel's motion for directed verdicts to the charges of murder.

**Ground Four**:     The trial judge erred in admitting a graphic color photograph of one of the gunshot victims during trial, which was prejudicial to appellant.

5

**Ground Five**:    Counsel failed to object or move to quash burglary indictment based on prosecutorial misconduct.

**Ground Six**:    Counsel was ineffective in his decision to forego cross-examination of the state witness without first interviewing and/or investigating to determine best course of action.

**Ground Seven**:    Counsel was ineffective for failing to request *Batson* hearing when prosecutor used a strike to remove the only black male from jury venire.

**Ground Eight**:    Counsel failed to object and/or move for a new trial due to prosecution failure to produce and/or preserve video tape evidence and male clothing taken from crime scene.

**Ground Nine**:    Counsel failed to object to judge's findings concerning juror with eyes closed during the jury instructions.

**Ground Ten**:    Counsel failed to object to prosecutor's closing argument due to the improper remarks made by the solicitor.

**Ground Eleven**:    Trial counsel was ineffective for failure to preserve for appellate review the fact that the trial judge showed that he was not impartial in light of the comment he made during sentencing, which was a structural error and denied the petitioner due process of law.

[Doc. 1.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal.

6

*Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

7

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

8

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

9

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (i) there is an absence of available State corrective process; or
> >
> >         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for post-conviction relief ("PCR"). State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar*

*v. State*, 653 S.E.2d 266 (S.C. 2007).[3]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

　　If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[4]

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[4]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies."  559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

13

> while the attention of the appellate court is focused on his
> case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failing to raise the claim, the petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

15

523 U.S. 614, 623 (1998).  To demonstrate this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION[5]

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

---

[5] Respondent has conceded that the Petition was timely and that all of Petitioner's grounds, except Ground Eleven, were exhausted in state court. [Doc. 16 at 9.]  Therefore, the Court proceeds to consider the Petition on the merits of the first ten claims.

16

arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008)

**Ground One**

Respondent is entitled to summary judgment on Ground One because it raises a matter of state law. Petitioner complains that the trial judge's jury instruction on manslaughter was erroneous because it did not include the traditionally sufficient provocation of finding one's significant other in bed with another. "It is black letter law that a federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C. § 2245(a)). In *Wright*, the petitioner raised a jurisdictional claim in his habeas petition, arguing that the state lacked jurisdiction over two of the counts against him because the proper procedure was not followed in transferring the counts from juvenile to circuit court. *Id.* "Because [petitioner's] claim, when pared down to its core, rests solely upon an interpretation of [state] case law

and statutes, it is simply not cognizable on federal habeas review." *Id.* (citing *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998)).  The same analysis is applicable here.  Petitioner's contention rests solely on state law, which is not within the purview of this Court.  Therefore, summary judgment in favor of Respondent  is appropriate.

**Ground Two**

In Ground Two, Petitioner asserts that the trial judge erred in failing to direct a verdict in Petitioner's favor on the burglary charge.  One of the two victims in this case was Petitioner's on-again, off-again girlfriend, Kim Sanders.  Petitioner entered Ms. Sander's home, the crime scene, with his key, knew the alarm code and had toiletries and clothing at the house; therefore, he argued that he could not be guilty of first degree burglary and the state's contention that he did not have permission to enter the dwelling was unfounded. [Doc. 1-1 at 8–9.]  Respondent counters that Petitioner is not entitled to relief on this ground because the record clearly supports that the state court's denial of relief was not unreasonable.  [Doc. 16 at 11–29.]

"[O]n review of the sufficiency of the evidence to support a criminal conviction . . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original).  Recently, the Supreme Court summarized how the case law has developed under *Jackson* with respect to federal habeas claims of insufficient evidence:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what

18

> conclusions should be drawn from evidence admitted at trial.
> A reviewing court may set aside the jury's verdict on the
> ground of insufficient evidence only if no rational trier of fact
> could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
> 1, ---, 132 S. Ct. 2, 4, 181 L. Ed.2d 311 (2011) (*per curiam*).
> And second, on habeas review, "a federal court may not
> overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees
> with the state court.  The federal court instead may do so only
> if the state court decision was 'objectively unreasonable.'" *Ibid.*
> (quoting *Renico v. Lett*, 559 U.S. ---, ---, 130 S. Ct. 1855, 1862,
> 176 L. Ed.2d 678 (2010)).

*Coleman v. Johnson*, --- U.S. ---, ---, 132 S. Ct. 2060, 2062 (2012) (per curiam).  Thus, this

Court may grant habeas relief on the basis of Ground Two if the decisions of the state

courts in denying the motion and upholding the conviction were objectively unreasonable.

In South Carolina, burglary in the first degree is statutorily defined as follows:

> (A) A person is guilty of burglary in the first degree if the person enters a
> dwelling without consent and with intent to commit a crime in the dwelling,
> and either:
>    (1) when, in effecting entry or while in the dwelling or in immediate
> flight, he or another participant in the crime:
>         (a) is armed with a deadly weapon or explosive; or
>         (b) causes physical injury to a person who is not a participant in
>         the crime; or
>         (c) uses or threatens the use of a dangerous instrument; or
>         (d) displays what is or appears to be a knife, pistol, revolver,
>      rifle, shotgun, machine gun, or other firearm; or
>    (2) the burglary is committed by a person with a prior record of two or
> more convictions for burglary or housebreaking or a combination of
> both; or
>    (3) the entering or remaining occurs in the nighttime.

S.C. Code Ann. § 16-11-311.  Petitioner does not dispute that the victim's apartment was

a "dwelling" within the meaning of the statute.  *See State v. Goldenbaum*, 365 S.E.2d 731,

732 (S.C. 1988) (finding the victim's apartment to "unquestionably" be a dwelling).  Nor

does Petitioner dispute that he entered the dwelling at night and that he had a pistol with

19

him when he entered the apartment.  [Doc. 1-1 at 2.] Petitioner's claim is that the State did

not have sufficient evidence to demonstrate that he entered the dwelling "without consent

and with intent to commit a crime in the dwelling."  *See* S.C. Code Ann. § 16-11-311(A).

The trial court found that there was sufficient evidence on the burglary count to

submit the charge to the jury. [App. 275.] Ms. Sander's daughter testified to the jury that

her mother had an "off and on" relationship with Petitioner. [App. 267.]   The daughter

testified further that her mother did not wish to speak to Petitioner when he had called the

house on the day of the incident and that Petitioner had not been at her mother's

apartment in three or four weeks. [App. 270–71.] As the South Carolina Supreme Court

has articulated,

> The proper test [for consent in first degree burglary] is whether, under the totality of the circumstances, a burglary defendant had custody and control of, and the right and expectation to be safe and secure in, the dwelling burglarized.
> ...
>
> It is instructive that our statutes do not define burglary in terms of who owns the property, but rather in light of who possesses it. If section 16–11–310(3)(a) defined "without consent" as "to enter a building without consent of the lawful owner," our inquiry would be very different. Instead, the General Assembly specifically couched burglary in terms of possession.
>
> In this case, we are concerned only with whether [defendant] had the requisite interest in the home. Viewed in the light most favorable to the State, the facts of this case warranted the submission of the case to the jury. A reasonable jury could conclude that [defendant] did not have any expectation of peace and security in the dwelling at issue nor custody and control of it, despite his ownership interest. He left with little protest when his mother requested he leave, took up residence elsewhere, and did not return until six months later when he was required to enter through a back window. Therefore, the jury could find that the home was not [defendant's] "own home" for burglary purposes.

*State v. Singley*, 709 S.E.2d 603, 606-07 (S.C. 2011).  In *Singley*, the defendant had a

partial ownership interest in the home he burglarized but the Supreme Court still found that

20

he was not entitled to possession of the dwelling. The Court finds that there was sufficient evidence here for a rational fact finder to determine that Petitioner entered the dwelling without consent even though he had a key and knew the alarm code. Like in *Singley*, the question is an intensely factual one of whether Petitioner had the right to possess the dwelling at the time that he entered. Based on Ms. Sanders' daughter's testimony, a rational fact finder could find that he did not.

There was also sufficient evidence for the trial judge to allow the jury to determine whether Petitioner entered the dwelling with the intent to commit a crime. Petitioner admitted that he took a gun into the apartment. [App. 290.] He kicked in the door to Ms. Sanders' bedroom once he entered the home. [App. 293.] Moreover, intent to commit a crime can be inferred from Petitioner's trespass onto Ms. Sanders' property. *See McMillian v. State*, 680 S.E.2d 905, 908–09 (S.C. 2009). Thus, there is evidence in the record that Petitioner committed the crime prohibited by S.C. Code Ann. § 16-11-311. Accordingly, Petitioner has failed to establish that the state court's adjudication of the matter was contrary to clearly established Supreme Court precedent or an unreasonable application of such precedent to the facts. Therefore, Petitioner is not entitled to federal habeas relief with respect to Ground Two.

**Ground Three**

In Ground Three, Petitioner argues that the trial court erred in not directing a verdict in his favor on the charge of murder. Respondent counters that the judge's denial of the directed verdict motion was not contrary to or an unreasonable application of Supreme Court precedent. The Court agrees with Respondent.

In South Carolina, murder is defined as "the killing of any person with malice aforethought, either express or implied."  S.C. Code. Ann. § 16-3-10.  "Malice is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong.  It is the doing of a wrongful act intentionally and without just cause or excuse." *Tate v. State*, 570 S.E.2d 522, 527 (S.C. 2002).  At the time that Petitioner was convicted, it was proper for a judge to instruct a jury that malice could be inferred from the defendant having possession of a deadly weapon.[6]

In viewing the evidence in the light most favorable to the State, the Court cannot determine that no rational fact finder would convict Petitioner or that the state courts made an unreasonable application of law in denying the motion for a directed verdict or in upholding Petitioner's convictions.  Petitioner argues that he shot Arthur Finley, the second victim, in self defense and that Ms. Sanders was accidentally shot in the struggle between the two men, so he did not demonstrate malice aforethought.  [Doc. 1-1 at 9.] However, the State presented evidence (which Petitioner admitted to in his own testimony) that Petitioner brought a gun into Ms. Sanders' home and kicked in her bedroom door. [App. 290–93.]  Additionally, as determined by the jury and found to be rationale by this Court, Petitioner was committing burglary in the first degree at the time of the shootings.  *See State v.*

---

[6] This precedent was overturned by *State v. Belcher*, which held that "where evidence is presented that would reduce, mitigate, excuse or justify a homicide (or assault and battery with intent to kill) caused by the use of a deadly weapon, juries shall not be charged that malice may be inferred from the use of a deadly weapon."  685 S.E.2d 802, 810 (S.C. 2009).  *Belcher* does not apply retroactively, but only to "all cases which [were] pending on direct review or not yet final where the issue [was] preserved" at the time that *Belcher* was decided.  Therefore, *Belcher* would not apply to Petitioner's case, but in an abundance of caution the Court will not presume in its review that malice can be inferred from possession of a deadly weapon, nor is it necessary to do so since the State presented additional evidence to show malice.

*Norris*, 328 S.E.2d 339, (S.C. 1985) (overruled on other grounds by *State v. Belcher*, 685 S.E.2d 802, 810 (S.C. 2009)) (holding that the appropriate charge on implied malice is "if one intentionally kills another during the commission of a felony, the implication of malice may arise. If facts are proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive.") Therefore, considering the facts that Petitioner brought a deadly weapon to the crime scene, kicked open the victim's bedroom door, shot two unarmed victims and was found by a jury to be committing burglary in the first degree at the time of the shootings, the Court cannot conclude that a rational fact finder could not find Petitioner guilty of murder or that the state court unreasonably applied Supreme Court precedent.  Therefore, Respondent is entitled to summary judgment on Ground Three.

**Ground Four**

In Ground Four, Petitioner contends that the trial judge erred in admitting a graphic, prejudicial photograph.  Trial counsel objected to its admission, arguing that it was prejudicial and cumulative. [App. 227–28.] As in Ground One, Petitioner complains of a violation of state evidentiary law.  As noted, federal habeas relief is not available for alleged violations of state law.  *Estelle,* 502 U.S. at 67–8*; Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010).  Moreover, the Petitioner does not give any reason for his argument that the photograph (of Ms. Sanders' body) was irrelevant – Petitioner was on trial for murder and the state was required to prove each element of the crime.  Photographs of the bodies and

crime scene were clearly relevant to the inquiry. Therefore, habeas relief is not appropriate. *See id.*

**Ground Five**

In Ground Five, Petitioner argues that his trial counsel was ineffective for not moving to quash the burglary indictment because of prosecutorial misconduct. When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*,

---

[7]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  In his PCR petition, Petitioner argued his trial counsel was ineffective for failing to object to the prosecutor's decision to reinstate the burglary charge after it had been dismissed at a preliminary hearing.  The Court finds that the PCR court adequately addressed this issue within the parameters of Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent for ineffective assistance claims.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  In considering this claim, the PCR court heard testimony from Petitioner and trial counsel:

> The [Petitioner] testified that he believed the indictment for Burglary-1st degree was obtained through prosecutorial misconduct, because the charge was not discovered until his preliminary hearing.  He testified that the Solicitor then directly indicted him for that charge.  He testified that trial counsel was ineffective for failing to object to the burglary charge being allowed to go forward.  The Applicant testified that he had keys to the home and [k]new the access code.  He also testified that he was not present for his arraignment.
>
> \*     \*     \*
>
> Trial counsel testified that the [Petitioner] was directly indicted for the burglary charge, but that he did not see any reason to object to the burglary indictment.  He testified that the burglary charge was dismissed at the preliminary

hearing, but that the Solicitor later approached him about a direct indictment. Trial counsel testified that the Solicitor asked him if he wanted a formal arraignment for the [Petitioner], and that he did not believe a formal arraignment was necessary, because he knew the [Petitioner's] position regarding the burglary charge in light of the fact that the [Petitioner] had keys to the house, the access code, and clothes there. Trial counsel also testified that, after the preliminary hearing, he told the [Petitioner] that the Solicitor could still directly indict him for burglary.

                    *        *        *

Trial counsel testified that he knew the State was going forward on the burglary charge at trial, in addition to the two murder charges.

                    *        *        *

The Court finds that [Petitioner's] testimony regarding trial counsel's failure to challenge the burglary is not credible. The Court also finds that trial counsel's testimony regarding his decision not to object to the indictment is credible. Trial counsel articulated a valid trial strategy for not challenging the burglary indictment. Trial counsel testified that he and the [Petitioner] discussed the burglary indictment well in advance of trial, and that they decided as a matter of strategy to ambush the charge at trial with evidence that the [Petitioner] had a key to the house, the access code to the house, and clothes at the house. Trial counsel testified that he successfully made this same argument at the preliminary hearing. Trial counsel was not ineffective for failing to challenge the indictment or moving to quash the indictment. Furthermore, the [Petitioner] has failed to present any credible evidence that the result would have been different if trial counsel had moved to quash the indictment. Accordingly, this allegation is denied.

[App. 549–51.]

Having considered and applied the appropriate law, the Court concludes the PCR

court's decision was not contrary to applicable Supreme Court precedent. At the PCR

hearing, Petitioner could not articulate a reason that the Solicitor could not bring the

burglary charge before a grand jury even if it had been dismissed at a preliminary hearing.

[See App. 532–41.] The PCR court found trial counsel's testimony on his strategy in

approaching the burglary charge to be credible. The PCR court's assessment of the

credibility of the witnesses is not objectively unreasonable and its factual findings are

entitled to a presumption of correctness that Petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The record shows that trial counsel made a strategic decision to waive the arraignment, as counsel knew that Petitioner wished to pled not guilty, and made the argument to the judge in a directed verdict motion that the State could not prove a burglary charge because Petitioner had access to the house and knew the alarm code. Counsel testified that Petitioner agreed with this approach. Petitioner has raised no clear and convincing evidence to overcome the state court's reasonable decision that counsel's performance was sufficient. Moreover, Petitioner has not demonstrated that under the *Strickland* standard, the result would have been different but for counsel's errors. Petitioner testified at the PCR hearing that if could have assisted more in his defense if he told counsel about his personal items that were at the victim's home, to help prove that he had access to the premises. [App. 463–64.] However, Petitioner knew that he was originally indicted for burglary [App. 462] and testified on his own behalf at the trial that he had a right to be present in the home [App. 291]. The Court finds that the PCR court reasonably applied the appropriate Supreme Court precedent to this claim of ineffective assistance and habeas relief is therefore appropriately denied.

**Ground Six**

In Ground Six, Petitioner argues that counsel was ineffective for not cross-examining Ms. Sanders' twelve-year-old daughter and for failing to interview her. At the PCR hearing, Petitioner claimed that if counsel had spoken to the daughter, she would have told them that she remembered seeing a gun before the murder happened, that she could have explained the relationship between Petitioner and her mother, and that she

could have testified to his good character. [App. 554.] Petitioner did admit that during trial the daughter acknowledged that he and Ms. Sanders were dating. [*Id.*]

Trial counsel testified that he and the Petitioner discussed potential witnesses. [*Id.*] Counsel also filed the typical discovery motions and spoke with the primary police officers. [App. 511.] He requested to speak with the victim's daughter but she did not wish to speak to him. [*Id.*] Counsel averred that he did not believe the daughter's testimony on direct was harmful to Petitioner and he did not want to cross-examine her in the event that testimony would come out that would hurt Petitioner's case. [*Id.*] The PCR court found counsel's testimony credible and held that

> The nature and scope of cross-examination is inherently a matter of trial tactics. *United States v. Nersesian*, 824 F.2d 1293, 1321 (2d Cir. 1987). "[A] defendant has a 'burden of supplying sufficiently precise information,' of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing 'whether such information . . . would have produced a different result." *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995). The [Petitioner] did not proffer any questions counsel allegedly failed to ask, and did not present any testimony showing what the witnesses; answers at trial would have been. Accordingly, the [Petitioner] has not shown that a different approach to cross-examination would have been beneficial to the defense. This allegation is denied.

[App. 555.] As in the prior ground, Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. The PCR court again credited counsel's testimony and found the strategic decision not to cross-examine the daughter to be a reasonable exercise of discretion in counsel's trial strategy. [*Id.*] As the Supreme Court noted in *Strickland*,

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments

466 U.S. at 690-91. Applying this precedent, the PCR court heard testimony that counsel attempted to interview the daughter, she refused, and he made the reasonable, strategic decision not to cross-examine a distraught twelve-year-old child.  This Court cannot determine that the PCR court's determination was in any way unreasonable or contrary to existing precedent..  Respondent is therefore entitled to summary judgment on Ground Six.

**Ground Seven**

In Ground Seven, Petitioner argues that trial counsel was ineffective for failing to make a *Batson* challenge when the single African-American juror on the jury panel was struck by the Solicitor's Office.  At the PCR hearing, counsel testified that he believed there was a line of cases that held a *Batson* challenge could not be sustained for the striking of one minority member, but admitted that he had been unable to find those cases before the PCR hearing. [App. 509.] Counsel testified that there was only a small number of minorities represented in the jury venire and that he used all of his strikes. [App. 510.] Counsel did not recall any juror misconduct and did not believe the jury did anything improper or that the trial judge was improper in any manner with the jury. [Id.] Petitioner testified that he felt he was denied a jury of his peers. [App. 473.]

The PCR court denied relief on this claim and held that

The process of jury selection is inherently a matter of trial tactics. *Palacio v. State*, 333 S.C. 506, 511 S.E.2d 62 (1999).  In *Palacio*, the Court also noted that "a criminal defendant has no right to a trial by any particular jury, but only a right to a

trial by a competent and impartial jury." *Id.* at 516, 511 S.E.2d at 68. A PCR applicant must present credible evidence that trial counsel's failure to make a *Batson* motion prejudiced the defense. *Id.* This Court finds that trial counsel properly evaluated and selected jury members, and trial counsel was not ineffective for failing to make a *Batson* motion. This Court further finds that the [Petitioner] has failed to meet his burden of proving how the result would have been different if trial counsel had made a *Batson* motion. Therefore, finding no evidence that defendant's right to a trial by a competent and impartial jury was violated, this allegation is denied.

[App. 552.] Respondent argues that Petitioner has failed to show that he experienced any prejudice under the *Strickland* standard and therefore habeas relief is not warranted. The Court agrees.

As noted, the question for the Court is whether the PCR court unreasonably applied existing Supreme Court precedent in deciding that counsel was effective in his jury selection and that Petitioner was not prejudiced–the Court finds that the application was reasonable. The Court need not determine whether counsel's interpretation of *Batson* was correct because Petitioner has not demonstrated any prejudice. First, there is no evidence in the record that the Solicitor's strike was because the juror was African-American. Petitioner did not call the Solicitor at his PCR hearing, nor did he present any other evidence of racial discrimination.[8] Moreover, there was overwhelming evidence that Petitioner committed the killings of the victims – namely, through his own testimony. Courts have held that petitioners cannot satisfy the prejudice prong of *Strickland* when "Petitioner has made absolutely no attempt to demonstrate that the jurors in his case were not impartial, or that the absence of [a certain juror] had an adverse effect on the trial's

---

[8] In order to raise a *Batson* challenge, a defendant must demonstrate that (1) the defendant is a member of a distinct racial group; (2) the prosecutor has used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his or her selection of the jury pool." *Batson v. Kentucky*, 476 U.S. 79, 96–7 (1986).

outcome. In light of the overwhelming evidence of his guilt, the Petitioner cannot establish that the outcome of his trial would have been different if his trial attorneys succeeded on their *Batson* challenge." *Montoya v. United States*, 2013 WL 633586, at *15 (E.D. Va. Feb. 19, 2013). The jury's verdict in this case was supported by substantial evidence. Therefore, the Court determines that the PCR's application of the relevant case law was reasonable and habeas relief should not be granted on this ground.

**Ground Eight**

Next, Petitioner argues that counsel was ineffective because "he failed to object and/or move for a new trial due to prosecution failure to produce and/or preserve video tape evidence and male clothing taken from crime scene." In denying relief on this claim, the PCR judge summarized the testimony at the hearing as follows

> The [Petitioner] testified that trial counsel was ineffective for failing to move for a mistrial on the grounds that his *Brady* rights were violated. He testified that the police destroyed a video tape that would have shown his belongings in the house. The [Petitioner] testified that trial counsel did address this issue at trial when he cross-examined John Rumfelt and introduced pictures of the house with his belongings in it. The [Petitioner] also agreed that the transcript indicates trial counsel cross-examined Rumfelt about the missing video tape, and about finding male clothing in the house.

> Trial counsel testified that he believed the video tape was made and that it still existed at the time of the preliminary hearing. He testified that he filed discovery motions within one or [two] days of being hired. Trial counsel testified that he knew several months prior to trial that the video tape was gone. He testified that he was able to get pictures of the scene, including pictures of the [Petitioner's] clothing in the victim's house, about a year before the trial started. He further testified that he gave copies of these pictures to the [Petitioner] well in advance of trial.

> Trial counsel testified that although he would have liked to have had the video tape to present at trial, he did have photos from the scene showing the same thing to present at trial. He testified that he and the [Petitioner] did not talk about the fact that the video tape may have also shown family portraits in the house.

[App. 555-56.] In evaluating the claim, the PCR court held that

> In evaluating post-trial Brady claims, the [Petitioner] must show that (1) the prosecution suppressed evidence, (2) the evidence would have been favorable to the accused, and (3) the suppressed evidence is material. *United States v. Wolf*, 839 F.2d 1387 (10th Cir. 1988). A *Brady* violation does not warrant reversal if the evidence is merely cumulative or impeaching. *Clark v. State*, 315 S.C. 385, 434 S.E.2d 266 (1993). "Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*, 434 S.E.2d at 268.
>
> The Court finds that both [Petitioner's] testimony and trial counsel's testimony that the video tape was unavailable at the time of trial is credible. However, this Court also finds that trial counsel's testimony that he was able to present the same substantive evidence that was on the video to the jury through pictures of the crime scene is credible. Trial counsel and the [Petitioner] agreed that the video tape showing the [Petitioner's] clothes at the house would have been beneficial, and that the tape did not exist any more at the time of trial. However, both trial counsel and the [Petitioner] testified that the pictures of the crime scene showed the [Petitioner's] clothes at the house. Trial counsel testified that he was able to address this issue when he introduced the pictures as evidence for the jury to consider, and when he cross-examined Rumfelt as to the whereabouts of the video tape. Therefore, this Court finds that the video tape evidence was merely cumulative, and that [Petitioner] has failed to meet his burden of proving a reasonable probability that the result of the trial would have been different if the evidence had been presented at trial. Accordingly, this allegation is denied.

[App. 556–57.] The PCR court applied the appropriate precedent in *Brady* and *Wolf*. The record supports the PCR court's determination that the evidence was not material and cumulative because the same evidence and testimony came in through the still photographs. Therefore, the Court finds that the PCR's dismissal of this claim was reasonable and not in conflict with applicable precedent.

**Ground Nine**

Petitioner's ninth ground is that counsel was ineffective for not objecting to the "Judge's findings concerning juror with eyes closed during the jury instructions." During the trial, while giving the jury instructions in involuntary manslaughter, the record shows the trial judge stated:

> Murder contains a lesser included offense of voluntary manslaughter. So while murder requires malice you all got keep your eyes open, all right? I'm sorry. If you don't have your eyes open I got to stop. While murder requires malice, malice is not a required element, not an essential element of manslaughter.

[App. 409.] Petitioner argues that his counsel should have objected to this remarks. At the PCR hearing, trial counsel testified that he did not recall any jurors sleeping during the trial and that there was no jury misconduct. [App. 526.] The PCR court found counsel's testimony on juror misconduct to be credible, that counsel's reasons for not believing the jurors engaged in misconduct were reasonable, and that Petitioner put forth no credible evidence demonstrating how alleged juror misconduct prejudiced his case. [App. 553.]

The Court finds that the PCR's determination that counsel was not ineffective on this ground was reasonable. The Fourth Circuit recently considered a similar issue on direct appeal from a district court trial. In *United States v. Johnson*, the defendant asserted that the trial court erred in failing to remove a sleeping juror. 409 Fed.App'x. 699 (4th Cir. 2011). There, the Fourth Circuit held that

> There is no evidence that the juror was sleeping. At worst, the record reflects that the juror was tired and perhaps inattentive for an undefined period of time during the Defense's opening argument and the informant's direct testimony. In addition, once the court noticed the juror, the court took a momentary break and instructed the jury on the importance of being alert. Absent any evidence that the juror was unable to consider the case fairly, [defendant] has failed to show error, much less plain error.

*Id*. at 692.  In light of this precedent, the Court cannot determine that counsel was ineffective.  Therefore, habeas relief is not warranted for this ground.

**Ground Ten**

Petitioner's tenth ground is that trial counsel was not effective because counsel failed to object to the Solicitor's closing argument, which Petitioner asserts contained improper and prejudicial statements.  In summarizing the hearing testimony on this issue, the PCR court noted that

> The [Petitioner] testified that trial counsel was ineffective for failing to object to the Solicitor's closing argument when he made statements to the jury about the burglary.  The [Petitioner] testified that he felt the burglary was being used to supplement the murder charge, and that he felt the burglary charge prevent[ed] him from being able to obtain a jury charge for lesser included offenses of murder.  He stated that the Solicitor told the jury the "cloak of innocence will fail!" during his closing argument, and that he felt this comment to the jury was prejudicial because it appealed to the bias of the jury.  He further stated that the Solicitor made incorrect statements of the law in his closing argument, and that he believed trial counsel should have objected to the Solicitor's entire closing argument.

> Trial counsel testified that he did not see anything important or objectionable during the Solicitor's closing argument, and that both sides are given latitude to make comments during closing arguments.

[App. 557.]  In analyzing the issue, the PCR court found that

> The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence.  *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996).  Furthermore, the solicitor's closing argument must not appeal to the personal biases of the jurors.  *Id.*  To be entitled to a new trial for improper closing arguments, the test is whether "the Solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *State v. Hamilton*, 344 S.C. 344, 362, 543 S.E.2d 586, 596 (2001).

> This Court finds the Applicant's testimony that trial counsel was ineffective for failing to object to the Solicitor's closing argument is not credible, while also finding trial counsel's testimony is credible.  Trial counsel testified that he did not believe the Solicitor made any objectionable comments.  The [Petitioner] has failed

34

to present any credible evidence that the Solicitor's comments so infected his trial that he was denied due process.  Therefore, this allegation is denied.

[App. 557–58.]

As set forth in *Donnelly v. DeChristoforo*, the proper legal standard to be applied to a claim of improper jury instructions, closing arguments or prosecutorial misconduct is whether the action so infected the trial with unfairness as to make the conviction a denial of due process.  416 U.S. 637 (1974).  As noted in *Donnelly*, closing arguments and jury instructions must be viewed in the context of the entire trial, and not in the abstract.  *Id.* at 645.

The PCR court utilized the appropriate precedent in conducting its analysis and the Court does not find the analysis to be objectively unreasonable.  The PCR court made a credibility analysis of both Petitioner and trial counsel's testimony and found counsel's testimony to be credible that there was not a due process issue with the Solicitor's closing argument.  The trial judge gave lengthy instructions on the presumption of innocence and the State's burden of proof. [App. 399–401.] The judge reiterated that Petitioner was required to prove nothing, but the State must prove his guilt beyond a reasonable doubt. [*Id.*] The Court cannot conclude that the PCR court was unreasonable in finding that the Solicitor's comments such as "[Petitioner] shot Arthur Finley down like a dog" or that "[Petitioner] is cloaked in the presumption of innocence" did not violate Petitioner's due process rights.  After Petitioner's defense that he had a lawful right to be in the house and that Arthur Finley attacked him, the prosecutor had the right to rebut these inferences with inferences of his own.  Nor does the Court conclude that the prosecution improperly suggested the jury could render inconsistent verdicts, but that the prosecutor properly

35

argued that if the jurors found the Petitioner guilty of burglary, then they should not find him guilty of the lesser included offense of involuntary manslaughter but instead guilty of murder.  The PCR court concluded that the solicitor's arguments were confined to the evidence and reasonable inferences from that evidence, and that such argument (particularly when viewed in light of the trial court's jury instructions) was not a violation of the Petitioner's due process rights.  The Court finds that conclusion reasonable and with a sound basis in the record.

**Ground Eleven**

In Petitioner's final ground, which he admits that he did not raise to the state court and thus is procedurally defaulted, he argues that counsel was ineffective for failing to object to the trial judge's comments during sentencing.  The trial judge told Petitioner during sentencing that "I don't believe your story you told the jury.  And the sentence is going to reflect the fact that I think you went over there and just killed those people in cold blood. [App. 435.] Because this ground is procedurally defaulted, Petitioner must show either cause and prejudice for the default or a fundamental miscarriage of justice.

In establishing cause, the Petitioner must explain why he failed to raise the claim to the state court or take refuge in the narrow exception set forth by the Supreme Court in *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012).  In *Martinez*, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  132 S. Ct. at 1315.  The Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an

36

> ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for a default if he demonstrates his PCR counsel was ineffective for failing to raise the issue and that the underlying ineffective assistance of trial counsel claim is a substantial one, *i.e.*, it has some merit.

As stated, the Supreme Court established in *Strickland* that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation—that is, "counsel's representation fell below an objective standard of reasonableness"—and (2) the prisoner was prejudiced as a result. 466 U.S. at 687–88. Petitioner has failed to demonstrate that his PCR counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal

37

defense attorneys would not defend a particular client in the same way."). The record demonstrates that PCR counsel vigorously argued Petitioner's case at the PCR hearing and strategically focused on the meritorious issues.

Moreover, Petitioner's underlying ineffective assistance claim is not sustainable. *See Martinez*, 132 S. Ct. at 1318 ("[A] prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland*."). Petitioner contends that it was "structural error" for the trial judge to make such comments because it demonstrates that the trial judge was biased. The standard for demonstrating judicial bias is high:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). Here, the trial judge made these comments only during sentencing and not in front of the jury. Moreover, he made such comments after hearing all the evidence during the proceedings and such comments do not demonstrate such "antagonism that would make fair judgment impossible." The judge merely gave his reasoning, supported by the jury's verdict, for the imposition of his sentence. The Court therefore concludes that Petitioner has failed to show that his underlying ineffective assistance claim has any merit because the Court cannot conclude that the judge's remarks demonstrated bias and thus prejudiced Petitioner in any way.

Petitioner also raises no other arguments as to why he did not raise this issue before the state courts in his pro se petitions (therefore has demonstrated no cause), nor has Petitioner demonstrated that he is actually innocent, as noted above in the Court's analysis on his directed verdict claims.  Accordingly, Respondent's motion should be granted as to Ground Eleven.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment [Doc. 15] be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge


January 22, 2014
Greenville, South Carolina